**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **Four Thirteen, LLC,** | ) | |
| **Plaintiff, and** | ) | |
| **vs.** | ) | **Civil Action No.** |
| **Pramana Capital, Inc.** | ) | |
| **and** | ) | |
| **Paul Shamoon,** | ) | |
| **Defendants.** | ) | **Plaintiff Demands Trial by Jury** |

## COMPLAINT

Plaintiff Four Thirteen, LLC, by its attorneys, Handler Thayer, LLP, for its complaint against Defendant Pramana Capital, Inc. and Peter Shamoon, states:

## NATURE OF THE CASE

1.      Plaintiff Four Thirteen, LLC ("Plaintiff"), in connection with Plaintiff's acquisition of a lending company, paid over $2,000,000 of fully refundable fees to Defendant Pramana Capital, Inc. ("Pramana") in order to secure the appropriate funding for the acquisition. Thereafter, Defendant Pramana agreed to pay another $375,000 to Plaintiff with definite repayment terms. Despite repeated oral and written promises by Pramana's President, Defendant Peter Shamoon, ("Shamoon") to repay the amounts in full by certain dates, Plaintiff has not been paid and, as a direct result of Defendants' conduct, Plaintiff lost an investment opportunity worth millions.

2.      Plaintiff, Pramana and Shamoon are collectively referred to as the "Parties" and Pramana and Shamoon are collectively referred to as the "Defendants."

## PARTIES, JURISDICTION AND VENUE

3.      Plaintiff Four Thirteen, LLC ("Plaintiff") is a Wyoming limited liability company that is a private holding company with a focus on impact-related investments globally. Plaintiff is a citizen of the State of Wyoming with its principal place of business in Wyoming.

4.      Defendant Pramana Capital, Inc. ("Pramana") is an Illinois corporation that was incorporated in 2015 and is a citizen of the State of Illinois with its principal place of business in Illinois. Pramana acquires portfolio companies including start-ups, joint ventures, minority equity investments targeting distressed investments, across sectors that include financial services, oil and gas, logistics, mining, banking and fintech.  Pramana operates in 5 countries with over 100 employees with its principal place of business and corporate headquarters located in Schaumburg, Illinois, County of Cook.

5.      Defendant Peter Shamoon ("Shamoon") is one of the founders of Pramana and its President and, upon information and belief, lives in St. Charles, Illinois, County of Kane.

6.      Pramana, through Shamoon, transacts business in the County of Cook, Illinois and the contracts that form the basis of the instant action were negotiated, drafted and executed in the County of Cook, Illinois and the conduct that forms the basis of the instant action took place in Cook County, Illinois.

7.      Pursuant to 28 U.S.C §1332, jurisdiction is proper in the United States District Court for the Northern District of Illinois because Plaintiff and Defendants are citizens of different states and the amount in controversy is in excess of the $75,000 jurisdictional amount.

8.      Pursuant to 28 U.S.C. §1390, venue is proper in the Eastern Division of the United States District Court for the Northern District of Illinois because the subject transactions took place within this district.

2

## ALLEGATIONS COMMON TO ALL COUNTS

9.     On March 12, 2020, the Parties entered into a written Term Sheet in which the Parties agreed that Defendants would agree to fund a $100,000,000 credit line to Plaintiff at three different time intervals (the "Funding"). Defendants knew that Plaintiff intended to use the credit line to acquire a lending company. In exchange, the Term Sheet required that Plaintiff agreed to pay a $2,000,0000 origination fee to Defendants. This fee was to be fully refundable in the event that Defendant Pramana did not perform. This Term Sheet is hereinafter referred to as the "Contract." The parties signed the Contract on March 12, 2020. *See* Exhibit A for Contract.

10.     At the time that the Parties executed the Contract, Defendants understood that the Plaintiff intended to use the funds to make an acquisition of a lending company that Plaintiff identified to Defendants and was fully underwritten by Defendants. Specifically, Plaintiff intended to acquire an existing lending business based in Newport Beach, California and grow that firm's lending base. Defendant also understood that Plaintiff executed a binding letter of intent with the selling partner of that acquisition based on an April 2020 closing date.

11.     On March 16, 2020, Plaintiff confirmed that it would instruct its bank to wire the $2,000,000 to Defendants.

12.     On that same date, United States District Court Judge for the Western District of Texas, Austin Division, the Honorable Robert Pitman, entered a temporary restraining order against Defendants in an enforcement action filed by the Securities & Exchange Commission, *Securities and Exchange Commission v. Meta 1 Coin Trust, Robert P. Dunlap, individually and d/b/a Clear International Trust, Nicole Bowdler and David A Schmidt, Defendants and Pramana Capital, Inc. and Peter K. Shamoun a/k/a Peter K. Shamoon*, Case no. 1:20-CV-273-RP (the "SEC

Action"), which, *inter alia*, froze Defendants assets, making it unlikely for Defendants to perform the Contract, or any of the promises and representations made to Plaintiff. Defendants never notified Plaintiff of this order in the SEC Action until Plaintiff threatened to sue Defendants for repayment of monies owed to them.

13.     On March 25, 2020, Plaintiff indeed transferred $2,000,000 to Defendants and Defendants accepted that money.

14.     On March 26, 2020, Defendants confirmed that it received the $2,000,000. At that time, Defendants promised that it was in process of executing an agreement but "will have the Institutional Commitment [$100,000,000] in hand and will forward the same to you immediately." Defendants added that they were "verifying our corporate commitment for the full amount of the $100 million USD per the terms of our term sheet and will be distributed to you in the 2nd Quarter and 3rd Quarter of this year. This initial funding will begin on April 25, 2020 at which time you may execute on your pending acquisition …" Finally, Defendants thanked Plaintiff "for doing business with" them.

15.     On April 1, 2020, Defendants retained counsel to represent them in the SEC Action.

16.     On April 4, 2020, Defendants again represented and promised to provide written confirmation of the Funding that it was supposed to provide Plaintiff.

17.     On April 8, 2020, Plaintiff reminded Defendants of the expectation to receive the $100,000,000 in funding and that, as a result of Defendants' failure to timely provide that funding, the company with whom Plaintiff expected to accomplish the acquisition was "threatening to walk away." Plaintiff asked Defendants to provide it "with more detail on this transaction to verify its legitimacy."

18.     On April 17, 2020, Defendants again represented that the "confirmation" that the "process" was "most certain[ly]."

19.     On April 23, 2020, Defendants again represented that a "confirmation" that the Funding would be forthcoming.

20.     April 25, 2020 came and went, and Plaintiff did not receive the Funding that Defendants promised.  In fact, to date, Defendants have never provided the promised Funding, leaving Plaintiff waiting.  Not surprisingly, however, Defendants kept the $2,000,000 fee.

21.     On April 28, 2020, Defendants represented that the Funding should conclude "tomorrow."

22.     On April 30, 2020, Defendants represented that they were putting the "finishing touches" on the Funding.

23.     On May 5, 2020, Plaintiff reminded Defendants that they had relied on the Funding in order to accomplish the acquisition.  Plaintiff also notified Defendants' failure to provide actual confirmation of the Funding in terms of a bank guarantee letter has caused other transactions to be compromised and, again, asked for a date upon which it would receive the necessary bank guarantee letter and also a confirmation that the Funding would be paid in the three intervals that was agreed to on March 12, 2020.

24.     On May 13, 2020, Defendants represented that the Funding would be accomplished.

25.     On May 27, 2020, Defendants represented that they were now on the "2 yard line" and a "definite timeline" for the Funding.

26.     On May 29, 2020, Defendants represented and "confirm[ed]" that the Funding would be accomplished as first promised in the March 12, 2020 Contract.  Defendants also

"thanked" Plaintiff for its "extreme patience" and noted that they were "[e]xcited to fund and finance the many opportunities that exist between our respective groups."

27.    On June 2, 2020, Defendants could only offer more excuses.   Defendants represented that "[m]uch of this business is expected to be ready to initiate and conclude on in a matter of days NOT weeks.  Please remain patient and allow us the latitude necessary for us to focus on various items to bring these opportunities to a successful outcome."

28.    On June 25, 2020, Plaintiff notified Defendants that due to Defendants' failure to perform, it was "forced to scramble" on the known acquisition and had to make significant nonrefundable payments in order to sustain the intended acquisition.

29.    On June 25, 2020, Defendants represented to Plaintiff that it could "state with the utmost confidence that we can begin the funding process on the various projects we've entered into and provide you with a funding commitment for your review, approval and execution.  …  In closing, rest assured that we will successfully conclude on this endeavor we've embarked on together now many months ago."

30.    In July and August 2020, Defendants made more representations and empty promises about the Funding.

31.    On August 12, 2020, the Parties, for good and valuable consideration, amended the Contract to provide for new funding dates on September 14, October 14 and November 14, 2020, and for Defendants to provide another $250,000 in funding (the "Amended Contract"), attached as Exhibit B.

32.    The Amended Contract also provided that if Defendants could not satisfy the new funding dates, it would repay Plaintiff the $2,000,000 original fee paid on the Contract in March

2020, plus $375,000, exclusive of interest. This additional amount in the Amended Contract was due to the delays from Defendants.

33. Defendants are aware that without the Funding, Plaintiff's intended acquisition will fail, and may tarnish Plaintiff's reputation in the industry, causing Plaintiff to be further injured on a pecuniary basis.

34. Plaintiff performed all conditions precedent required by the Contract and Amended Contract.

35. To date, Defendants have never provided the promised Funding, leaving Plaintiff waiting. Not surprisingly, however, Defendants kept the $2,000,000 fee.

36. Moreover, throughout all of the negotiations with Defendants, Defendants did not mention the existence of the freeze order in the SEC Action even though they knew that this order prohibited them from transferring funds to Plaintiff.

37. The acquisition opportunity no longer exists for Plaintiff.

## COUNT I
## BREACH OF CONTRACT AGAINST PRAMANA

38. Plaintiff adopts and incorporates allegation nos. 1-37 as and for allegation nos. 1-37 of Count I.

39. On March 12, 2020, Plaintiff and Defendant Pramana entered into a valid and enforceable Contract.

40. On August 12, 2020, Plaintiff and Defendant Pramana entered into a valid and enforceable Amended Contract.

41. The Contract required Plaintiff to pay to Defendant Pramana a refundable $2,000,000 fee in connection with Defendant Pramana's securing of funding for Plaintiff's

acquisition. In the Amended Contract, Defendant Pramana agreed to pay Plaintiff an additional $375,000, to be repaid pursuant to definite terms, including deadlines for payment.

42. Plaintiff performed all conditions precedent, including the transfer of $2,000,000 from Plaintiff to Defendant Pramana.

43. To date, Defendant Pramana neither secured the requisite funding nor made any payments under the Contract or Amended Contract, therefore, breaching both the Contract and Amended Contract.

44. As a result of Defendant Pramana's breach of contract, Plaintiff has sustained damages of $2,375,000, plus interest, and the loss of an investment opportunity that would have earned approximately $10,000,000 annually.

WHEREFORE, Plaintiff Four Thirteen, LLC prays for judgment in its favor and against Defendant Pramana Capital, Inc. for damages sustained by it as a result of Defendant's conduct, including, but not limited to, any other damages allowable under law, including, attorney's fees and costs, and such other relief as this Court deems appropriate.

## COUNT II
## FRAUD AGAINST PRAMANA AND SHAMOON

45. Plaintiff adopts and incorporates allegation nos. 1-44 as and for allegation nos. 1-44 of Count II.

46. Defendants made the above repeated false representations of material fact to Plaintiff, namely, all of the above representations of fact that Defendants would arrange for funding from others so that the Plaintiff could accomplish the known acquisition of a lending company and then, promising to repay Plaintiff's monies when they knew, or should have known, that a pending order in the SEC Action prevented them from transferring any monies to Plaintiff, directly contradictory to the representations that it made to Plaintiff.

8

47.     As set forth above, from March through August 2020, Defendants made repeated assurances and provided bank statements to Plaintiff showing ample funds available that the required funding would be forthcoming and/or they would repay fees already paid to Plaintiff.

48.     All during that time, Defendants were aware of the freeze order in the SEC Action entered on March 16, 2020 that prevented Defendants from transferring any monies to Plaintiff. During the negotiations between Plaintiff and Defendants, Defendants never disclosed the existence of the freeze order entered in the SEC Action.

49.     Defendants knew that their representations about providing funding or repaying monies to Plaintiff were false, because they knew that the freeze order entered in the SEC Action prevented the transfer of any monies.

50.     Defendants made these representations to Plaintiff for the purpose of inducing Plaintiff to continue to do business with them so Defendants could earn a handsome profit from Plaintiff.

51.     Plaintiff was completely unaware of Defendants' secret intention to not provide the funding or repay any of the monies and justifiably relied on the representations that Defendants would both provide the necessary funding for the Plaintiff to accomplish the acquisition and/or repay the monies to Plaintiff as promised in the Contact and Amended Contract.

52.     Plaintiff was injured as a direct and proximate result of Defendants' fraudulent representations in the amount of $2,375,000, plus interest, and the loss of an investment opportunity that would have earned approximately $10,000,000 annually.

WHEREFORE, Plaintiff Four Thirteen, LLC prays for judgment in its favor and against Defendants Pramana Capital, Inc. and Peter Shamoon for damages sustained by it as a result of

Defendants' conduct, including, but not limited to, any other damages allowable under law, including, attorney's fees and costs, and such other relief as this Court deems appropriate.

**COUNT III**
**PROMISSORY ESTOPPEL AGAINST PRAMANA AND SHAMOON**

53.     Plaintiff adopts and incorporates allegation nos. 1-52 as and for allegation nos. 1-52 of Count III.

54.     Defendants made unambiguous promises to Plaintiff, namely, that it would provide funding for Plaintiff's intended acquisition and/or repay monies pursuant to the Contract and Amended Contract.

55.     Plaintiff justifiably relied on all of the unambiguous promises made by Defendant.

56.     Over the course of months of negotiations, Defendants knew that Plaintiff's reliance on the unambiguous promises was expected and foreseeable.

57.     Plaintiff relied on Defendants' unambiguous promises to its detriment, and has lost, at a minimum, $2,375,000, plus interest, and the anticipated profits from its lost opportunity to make the known acquisition, which Plaintiff estimated to be no less than $10,000,000 annually.

WHEREFORE, Plaintiff Four Thirteen, LLC prays for judgment in its favor and against Defendants Pramana Capital, Inc. and Peter Shamoon for damages sustained by it as a result of Defendants' conduct, including, but not limited to, any other damages allowable under Illinois law, including, attorney's fees and costs, and such other relief as this Court deems appropriate.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACT
## AGAINST PRAMANA AND SHAMOON

58.     Plaintiff adopts and incorporates allegation nos. 1-57 as and for allegation nos. 1-57 of Count IV.

59.     Plaintiff had a valid and existing contractual relationship with a third party to acquire another company.

60.     Defendants knew that Plaintiff had a valid and existing contractual relationship with a third party to acquire another company.

61.     Due to Defendants' inability to provide the funding as promised during the negotiations with Plaintiff, Plaintiff was forced to breach the contract with the third party, causing Plaintiff to incur damages.

62.     Defendants' intentional and unjustified inducement of the Plaintiff caused Plaintiff to breach the contract with a third party.

63.     Defendants' wrongful conduct caused Plaintiff to breach of the contract with the third party.

64.     Plaintiffs incurred damages as a result of Defendants' wrongful conduct in the form of $2,375,000, plus interest, and the loss of an investment opportunity that would have earned approximately $10,000,000 annually.

WHEREFORE, Plaintiff Four Thirteen, LLC prays for judgment in its favor and against Defendants Pramana Capital, Inc. and Peter Shamoon for damages sustained by it as a result of Defendants' conduct, including, but not limited to, any other damages allowable under Illinois law, including, attorney's fees and costs, and such other relief as this Court deems appropriate.

**COUNT V**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**AGAINST PRAMANA AND SHAMOON**

65.     Plaintiff adopts and incorporates allegation nos. 1-64 as and for allegation nos. 1-64 of Count V.

66.     Plaintiff had a reasonable expectation of entering into a valid business relationship through the acquisition of a lending company.

67.     Plaintiff informed Defendants of its expectation to acquire a lending company and that was the purpose of the funding that Defendant Pramana would be providing.

68.     Defendants knew that Plaintiff expected to enter into a valid business relationship through the acquisition of a lending company.

69.     Defendants purposefully interfered with Plaintiff's expectancy when they fraudulently induced Plaintiff to act and then failed to provide the necessary funding interference.

70.     Defendants' purposeful interference with Plaintiff's expectancy prevented Plaintiff's legitimate expectancy from ripening into a valid business relationship.

71.     As a result of Defendants' purposeful interference, Plaintiff incurred damages as a result of Defendants' wrongful conduct in the form of $2,375,000, plus interest, and the loss of an investment opportunity that would have earned approximately $10,000,000 annually.

WHEREFORE, Plaintiff Four Thirteen, LLC prays for judgment in its favor and against Defendants Pramana Capital, Inc. and Peter Shamoon for damages sustained by it as a result of Defendants' conduct, including, but not limited to, any other damages allowable under Illinois law, including, attorney's fees and costs, and such other relief as this Court deems appropriate.

Plaintiff demands a trial by jury.

Date: October 26, 2020                  Plaintiff Four Thirteen, LLC,


By:     /s/ Michael Ripani                     

One of its attorneys


Michael N. Ripani
Handler Thayer, LLP
191 N. Wacker Dr., Suite 2300
Chicago, IL 60606
Telephone: (312) 641-2100
E-mail: mripani@handlerthayer.com
Attorney I.D. No. 6204959

# EXHIBIT A



Indicative Term Sheet

# TERM SHEET
# BETWEEN
# PRAMANA CAPITAL INC.
# AND
# FOUR THIRTEEN, LLC

*This summary of terms and conditions ("Term Sheet") summarizes the principal terms of financing for Four Thirteen, LLC. The completion of the transactions contemplated by this Term Sheet will be subject to, amongst other things, satisfactory completion of financial and legal due diligence by the LENDER, as well as the completion of financial documents acceptable to the LENDER and Borrower. The terms and subject matter herein are confidential and for internal use only. The contents are not to be reproduced or distributed to the public, press, or other parties without the express written consent of Pramana Capital and Four Thirteen, LLC.*

*March 12, 2020*

*Dear Mr. Rogers,*

This Term Sheet dated March 12th, 2020 (**"Effective Date"**) summarizes the principal terms with respect to Four Thirteen, LLC Inc., located at 109 East 17th Street, Suite 450, Cheyenne, WY 82001 ("**Four Thirteen, LLC**" or "**Borrower**" in the alternative) and **Pramana Capital, Inc.** located at 425 North Martingale Road, Suite 1310, Schaumburg, IL 60173 ("**Pramana**" or "**LENDER**" in the alternative) entering into a mutually beneficial relationship.

This Term Sheet constitutes a legally binding obligation of the Parties subject to the *Origination Fee* paid to Pramana and or its affliates. No other legally binding obligations on the Parties will be created, implied, or inferred until a definitive Agreement is fully executed regarding the subject matter of this Term Sheet.

The Parties intend to negotiate and execute the definitive Agreement within 10 days from the date hereof.

Four Thirteen, LLC and Pramana shall be referred to as the "Parties."

**Proposed Offering Terms**

| | |
|---|---|
| **Borrower:** | Four Thirteen, LLC, a Wyoming corporation (the "Borrower"). |
| **LENDER:** | Pramana Capital Inc. (the "LENDER"). |
| **Total LOAN AMOUNT:** | $100,000,000 USD Term Loan to Four Thirteen, LLC payable in 3 Installments (See Appendix A for Tranche and Payment Schedule): |

          1) First Tranche:    $35 Million USD due by April 25th, 2020
          2) Second Tranche:  $35 Million USD due by June 25th, 2020
          3) Third Tranche:   $30 Million USD due by July 25th, 2020

Page 1 of 7





Indicative Term Sheet

Secured Term Loan with 2% Origination Fee ($2,000,000 USD) Amortized over 7 Years at 8% Interest Rate with One Year Deferred Interest and Prinicpal Payments. Payments for month 13 thru month 24 will be interest only payments and will be reflected within Appendix A Tranche and Payment Schedule. Whereas the loan is subject to the initial payment of 2% Origination Fee by the Borrower to the LENDER that is fully refundable in the event whereby the LENDER is unable or unwilling to lend to the Borrower.

Warrants - Four Thirteen, LLC shall issue warrants for its Common Shares exercisable into 10% of its fully-diluted common shares (warrants have a seven (7) year life from date of issuance)

**Post-Money Equity Share for Pramana Capital:** Subject to the exercise of the aforementioned warrants, Pramana will have the option to acquire up to 10% of the Fully-Diluted Common Equity of Four Thirteen, LLC

**Prepayment Penalty:** None.

**Expected Closing Date:** To be determined.

**Terms of Warrants**

**Liquidation Preference:** In the event of a liquidation, dissolution or winding-up, the proceeds shall be distributed to the stockholders as follows:

First pay 1x the original purchase price on each Warrant that converts into Common Stock. Thereafter, Preferred Stock and Common Stock share on an as-converted basis. A sale of all or substantially all of the assets of the Borrower and a merger, reorganization or other transaction in which 50% of the outstanding voting power of the Borrower is transferred and an exclusive, irrevocable licensing of all or substantially all of the Borrower's intellectual property to a third party will be treated as a liquidation event, thereby triggering the liquidation payment (a "Liquidation Event"). The holders of more than 60% of the outstanding Warrants may waive the treatment of such a transaction as a Liquidation Event.

**Redemption:** The Warrants will not be redeemable.

**Conversion:** Each Warrant shall initially be convertible into one share of Common Stock at any time at the holder's option for two years after the closing date of this transaction.

**Automatic Conversion:** Warrants automatically convert into Common Stock upon the earlier of (i) the election of more than 60% of the outstanding shares of Common Stock or (ii) the consummation of an underwritten public offering with aggregate net proceeds to the Borrower in excess of $150,000,000 USD (the "Qualified Public Offering").

1    Additional Terms and Conditions

a.    Confidentiality. This Term Sheet and its contents are intended for the exclusive use of the Parties and shall not be disclosed to any person other than their Representatives, as defined hereunder, for the purposes of the proposed transaction unless the prior written consent of the relevant party is obtained. Pramana and the Borrower will use the exchange of proprietary confidential information solely for the purpose of due diligence investigation related to this Term Sheet and the Agreement ("Confidential Information"). Both Pramana and the Borrower, their respective affiliates,



Indicative Term Sheet

directors, officers, employees, advisors, and agents (Pramana and the Borrower "Representatives") will keep the Confidential Information strictly confidential commencing from the receipt of this Term Sheet. Pramana Capital and the Borrower will disclose the Confidential Information only to those Representatives who need to know such Confidential Information for the purpose of consummating any transaction contemplated herein or pursuant to the Agreement. Pramana and the Borrower shall be held liable for any breach of this paragraph by their respective Representatives. In the event the Parties do not execute an Agreement, Pramana and the Borrower will return to one another any Confidential Information, or will certify, in writing, that all such materials or copies of such materials have been destroyed. Pramana and the Borrower shall not use any Confidential Information to compete with one another in the event the transactions contemplated herein and pursuant to the Agreement do not close. The provisions of this paragraph will survive the termination of this Term Sheet indefinitely.

b.  Fees. Each party shall be solely liable for all of its own fees, costs and other expenses pursuant to the completion of this Term Sheet.

c.  Governing Law.The Parties agree that this Term Sheet shall be governed by and construed in accordance with the laws of the State of Illinois. The courts of Illinois shall have exclusive jurisdiction.

d.  Entire Understanding. The Parties acknowledge and agree that this Term Sheet represents an understanding of the terms to be included in the definitive Agreement which is intended to be drafted within five [5] days of the execution of this Term Sheet. Additional terms may be added to the definitive Agreement and neither party is obligated to execute the definitive Agreement unless all terms are acceptable to both Parties

If these terms are acceptable to the Borrower and LENDER, please so indicate by executing and return it to the undersigned no later than 5:00 p.m. PST on March 13, 2020.

By signing this Term Sheet, each party acknowledges their intention to proceed pursuant to the terms referenced hereinabove.

The Parties hereby agree to the terms and conditions of this Term Sheet and direct their lawyers to proceed in drafting the definitve Agreement.

Pramana Capital Inc.                              Four Thirteen, LLC Inc.

Signed                                           Signed

Peter K Shamoon                                  Jay L Rogers
Name                                             Name

President                                        Chief Executive Officer
Title                                            Title

03/12/2020                                       03/12/2020
Date                                             Date

Page 3 of 7



Indicative Term Sheet

# APPENDIX A

## TRANCHE AND PAYMENT SCHEDULE

## SUMMARY:

### LOAN TERMS & Payment Schedule:

| | | |
|---|---|---|
| Total Loan Principal | $100,000,000 | USD |
| Interest Rate | 8.0% | |
| Term | 7 | years |
| Payment Schedule | Monthly | |
| Number of Payments | 84 | |
| Monthly Payment Due | ($1,558,621.44) | |



| Loan Amount | $100000000 | | Monthly Pay: $1,558,621.44 |
|---|---|---|---|
| Loan Term | 7 | years | Total of 84 Loan Payments $130,924,200.98 |
| Interest Rate (APR) | 8 | % | Total Interest $30,924,200.98 |



## Annual Amortization Schedule

### Annual Schedule

| | Beginning Balance | Interest | Principal | Ending Balance |
|---|---|---|---|---|
| 1 | $100,000,000.00 | $7,598,686.33 | $11,104,770.95 | $88,895,229.05 |
| 2 | $88,895,229.05 | $6,676,995.82 | $12,026,461.46 | $76,868,767.60 |
| 3 | $76,868,767.60 | $5,678,805.45 | $13,024,651.83 | $63,844,115.77 |
| 4 | $63,844,115.77 | $4,597,765.80 | $14,105,691.48 | $49,738,424.27 |
| 5 | $49,738,424.27 | $3,427,000.34 | $15,276,456.94 | $34,461,967.32 |
| 6 | $34,461,967.32 | $2,159,061.94 | $16,544,395.34 | $17,917,571.99 |
| 7 | $17,917,571.99 | $785,865.29 | $17,917,571.99 | $0.00 |

Page 4 of 7



Indicative Term Sheet

## LOAN TERMS

| | | |
|---|---|---|
| Total Loan Principal | $100,000,000 | USD |
| Interest Rate | 8% | |
| Term | 7 | Years |
| Payment Schedule | Monthly | |
| Number of Payments | 84 | |
| Monthly Payment Due | ($1,558,621) | |

| DATE | Payment Type | | | Cash Flow Schedule |
|---|---|---|---|---|
| March 16, 2020 | Origination Fee | | | ($2,000,000) |
| April 25, 2020 | First Tranche | | | $35,000,000 |
| June 25, 2020 | Second Tranche | | | $35,000,000 |
| July 25, 2020 | Third Tranche | | | $30,000,000 |
| | Pramana Net Cashflows - 2020 | | | **$98,000,000** |
| | **Principal** | | **Interest** | |
| August 1, 2021 | Interest Only | $368,145.25 | $368,145.25 | |
| September 1, 2021 | Interest Only | $368,145.25 | $368,145.25 | |
| October 1, 2021 | Interest Only | $368,145.25 | $368,145.25 | |
| November 1, 2021 | Interest Only | $368,145.25 | $368,145.25 | |
| December 1, 2021 | Interest Only | $368,145.25 | $368,145.25 | |
| January 1, 2022 | Interest Only | $368,145.25 | $368,145.25 | |
| February 1, 2022 | Interest Only | $368,145.25 | $368,145.25 | |
| March 1, 2022 | Interest Only | $368,145.25 | $368,145.25 | |
| April 1, 2022 | Interest Only | $368,145.25 | $368,145.25 | |
| May 1, 2022 | Interest Only | $368,145.25 | $368,145.25 | |
| June 1, 2022 | Interest Only | $368,145.25 | $368,145.25 | |
| July 1, 2022 | Interest Only | $368,145.25 | $368,145.25 | |
| August 1, 2022 | $1,190,476.20 | $1,558,621.44 | $368,145.25 | |
| September 1, 2022 | $1,190,476.20 | $1,558,621.44 | $368,145.25 | |
| October 1, 2022 | $1,190,476.20 | $1,558,621.44 | $368,145.25 | |
| November 1, 2022 | $1,190,476.20 | $1,558,621.44 | $368,145.25 | |
| December 1, 2022 | $1,190,476.20 | $1,558,621.44 | $368,145.25 | |

Page 5 of 7



Indicative Term Sheet

| | | | |
|---|---|---|---|
| January 1, 2023 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| February 1, 2023 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| March 1, 2023 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| April 1, 2023 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| May 1, 2023 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| June 1, 2023 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| July 1, 2023 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| August 1, 2023 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| September 1, 2023 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| October 1, 2023 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| November 1, 2023 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| December 1, 2023 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| January 1, 2024 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| February 1, 2024 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| March 1, 2024 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| April 1, 2024 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| May 1, 2024 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| June 1, 2024 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| July 1, 2024 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| August 1, 2024 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| September 1, 2024 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| October 1, 2024 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| November 1, 2024 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| December 1, 2024 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| January 1, 2025 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| February 1, 2025 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| March 1, 2025 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| April 1, 2025 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| May 1, 2025 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| June 1, 2025 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| July 1, 2025 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| August 1, 2025 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| September 1, 2025 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| October 1, 2025 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| November 1, 2025 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| December 1, 2025 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| January 1, 2026 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| February 1, 2026 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |



Indicative Term Sheet

| | | | |
|---|---|---|---|
| March 1, 2026 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| April 1, 2026 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| May 1, 2026 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| June 1, 2026 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| July 1, 2026 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| August 1, 2026 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| September 1, 2026 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| October 1, 2026 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| November 1, 2026 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| December 1, 2026 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| January 1, 2027 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| February 1, 2027 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| March 1, 2027 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| April 1, 2027 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| May 2, 2027 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| June 1, 2027 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| July 1, 2027 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| August 1, 2027 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| September 1, 2027 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| October 1, 2027 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| November 1, 2027 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| December 1, 2027 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| January 1, 2028 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| February 1, 2028 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| March 1, 2028 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| April 1, 2028 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| May 1, 2028 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| June 1, 2028 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| July 1, 2028 | $1,190,476.20 | $1,558,621.44 | $368,145.25 |
| ONE TIME PAYMENT | **$14,285,714.00** | $0.00 | $0.00 |
| | **$100,000,000.40** | **$116,638,486.68** | **$30,924,201.00** |

# EXHIBIT B

**ADDENDUM TO TERM SHEET**
**BETWEEN**
**PRAMANA CAPITAL INC.**
**AND**
**FOUR THIRTEEN, LLC**

This Addendum is to be referenced along with the original executed Term Sheet dated March 12th, 2020, between the following parties; Four Thirteen, LLC, ("413"), and Pramana Capital Inc. ("PRAMANA"). The above reference executed document had defined terms and conditions which are to remain in place as noted. This Addendum is now written and agreed upon to be a formal part, in addition to, the already executed document referenced above.

May it be known that the undersigned parties, for good consideration, do hereby agree to make the following changes and or additions that are outlined below. And that these changes and or additions shall be made valid as if they were written and executed in the stated original executed document.

413 and PRAMANA hereby agree that the following investment terms and listed deal point modifications are fully applicable and will be adhered to as additional terms to the original executed Term Sheet:

    1.    PRAMANA agrees to fund 413 an amount equal to Two Hundred and Fifty Thousand Dollars ($250,000.00) on or before August 11, 2020 via wire transfer or direct ledger to ledger bank transfer.

    2.    PRAMANA and 413 agree to the following revised funding schedule, payable in (3) installments:
          * First tranche will be released to 413 on or before September 14, 2020.
          * Second tranche will be released to 413 on or before October 14, 2020.
          * Third tranche will be released to 413 on or before November 14, 2020.

Amounts listed for each tranche in the original signed document will remain the same.

413      PRAMANA        Page 1



3.      PRAMANA agrees to have draft copies of the required formal loan documents to 413 on or before August 25, 2020 for review. Once reviewed and approved by 413, final loan documents will be executed between the parties on or before September 4th, 2020.

4.      It is agreed by PRAMANA that in the event the company fails to fund the loan commitment in full as agreed in the original executed document and the modified terms listed in this addendum, or in the event any payment dates in the revised tranche schedules listed above are missed, PRAMANA agrees to return and repay all dollars which 413 has advanced to date including but not limited to the Two Million Dollars ($2,000,000.00) loan origination fee paid to Fermion Capital Management and $375,000.00 of which $250,000 is noted in item #1 above to be paid August 11, 2020. In the event of a breach PRAMANA agrees to return the total calculated amount of ($2,125,000.00) to 413 within ten (10) business days of a formal written request made to PRAMANA from 413. In the event PRAMANA is unable to fund the total amount noticed by 413 within the ten (10) business day period, a default fee in the amount of Five (5%) percent monthly will be calculated and added onto a total balance ongoing until the total amount outstanding is retired and paid in full.

**<u>REMAINDER OF PAGE LEFT BLANK INTENTIONALLY</u>**

Page 2

413          PRAMANA

Agreed and accepted as noted above.

**Four Thirteen, LLC**

By: _____
    Jay L. Rogers
    CEO

Date _____

**Pramana Capital, Inc.**

By: _____
    Peter K. Shamoon
    President

Date _____